# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 1:05CR00008 |
| v. ) | **OPINION AND ORDER** |
| ) | |
| **BARRY AYALA**, ) | By: James P. Jones |
| ) | Chief United States District Judge |
| Defendant. ) | |

*Zachary T. Lee, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy C. Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The question presented in this criminal case is whether the defendant is entitled to a new trial because of the admission, over the defendant's objection, of incriminating statements made by a co-conspirator to an undercover law enforcement officer. I hold that the out-of-court statements were not testimonial and their admission did not violate the defendant's Confrontation Clause rights or the Federal Rules of Evidence.

I

The defendant, Barry Ayala, was convicted by a jury of conspiring to distribute cocaine base, 21 U.S.C.A. §§ 846, 841(a)(1) (West 1999), and possession with intent

to distribute cocaine base, 21 U.S.C.A. § 841(a)(1). He has filed a Motion for New Trial, complaining of the introduction of certain testimony by a federal law enforcement agent reciting incriminating out-of-court statements made by Edward Pope, a co-defendant who earlier pleaded guilty and did not testify at trial. The motion has been briefed and is ripe for decision.[1]

As shown by the evidence at trial, the defendant, along with co-defendant Pope, were arrested at a fast food restaurant in Bristol, Virginia, during an undercover drug operation. The operation was orchestrated by Stephen Poindexter, a confidential informant, who had been arrested earlier that day for drug possession. In order to gain favor with the authorities, Poindexter volunteered to work in an undercover capacity to secure additional arrests in the Bristol area. Poindexter believed that he could arrange a purchase of two eight balls[2] of crack cocaine (cocaine base). Poindexter placed a cell phone call to Pope, known by him from previous drug transactions, and told Pope that he knew of a customer who was looking to buy two eight balls of crack cocaine that night. Pope agreed to locate the drugs from another source and then called Poindexter back to discuss final arrangements for the buy. During this

---

[1] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

[2] An "eight ball" is a street term denoting a quantity of cocaine or other illicit drugs that weights an eighth of an ounce or 3.5 grams.

-2-

conversation, Poindexter handed the cell phone to federal drug agent Brian Snedeker under the guise that he was the customer seeking to purchase the crack cocaine.

Agent Snedeker testified at trial that he had then negotiated the terms of the drug purchase with Pope. Pope informed Snedeker that "his guy" would supply the drugs, but that he only had one eight ball of crack cocaine available. However, if he purchased the first eight ball, he and "his guy" would locate a second eight ball for purchase at a later time.

Pope and Snedeker agreed to meet at the fast food restaurant. When Snedeker and Poindexter arrived at the restaurant's parking lot, police converged on Pope's car and ordered everyone inside to place their hands in the air. Pope was in the driver's seat, a woman was in the front passenger seat, and the defendant was located in the back seat.

According to testimony from Snedeker and an arresting officer, Pope and the woman immediately raised their hands in response to the order from the police. However, the defendant did not. When authorities approached the vehicle, the defendant leaned towards the floorboard and his hands and head were not initially visible. After he was removed from the vehicle, a search of the interior near where the defendant had been sitting revealed a plastic sandwich bag containing 1.8 grams of crack cocaine.

In a pretrial Motion in Limine, the defendant sought a ruling prohibiting the government from introducing the statements made by Pope to Agent Snedeker as inadmissible hearsay, which motion was denied.

At trial, Agent Snedeker testified about his conversation with Pope, and Pope's statement that "his guy" would be supplying one eight ball of crack cocaine that evening and would supply an additional eight ball at some point in the future. Pope did not testify. During closing arguments, the government contended that Pope's statements about "his guy" supplying drugs were references to the defendant.

II

The defendant challenges the admission of Pope's out-of-court statements under the Confrontation Clause of the Sixth Amendment. He argues that the holding announced in *Crawford v. Washington*, 541 U.S. 36 (2004), makes the statements at issue inadmissible because those statements were not tested "in the crucible of cross-examination." *Id.* at 61.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. *Crawford* overruled precedent that allowed the admission of out-of-court statements assessed as reliable under *Ohio v. Roberts*, 448 U.S. 56

-4-

(1980), and instead requires such statements to be subject to cross-examination if they are deemed "testimonial" in nature. In particular, where the governments seeks to admit an out-of-court statement that is testimonial, it must establish that the declarant is unavailable and that the defendant had a prior opportunity to cross-examine the declarant.

I find that the statements made by Pope to Agent Snedeker were not testimonial in nature. The Supreme Court has not given an exhaustive definition of testimonial hearsay. The Court has defined it at least as "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine or similar pre-trial statements that declarants would reasonably expect to be used prosecutorially." *Crawford*, 541 U.S. at 51 (internal quotations omitted). It is also defined as "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 52 (internal quotations omitted). Statements elicited from interrogations by law enforcement officers fall squarely within the class of testimonial hearsay *Crawford* addressed. *See Davis v. Washington*, 126 S. Ct. 2266, 2278 (2006). An interrogation is testimonial when it is conducted primarily to establish or prove some past fact potentially relevant to a later prosecution. *Id.*

If the statements at issue were elicited from an interrogation conducted by Agent Snedeker in order to establish or prove past facts relevant to a criminal prosecution, there is no doubt that such statements would be considered testimonial for purposes of *Crawford*. An interrogation is defined as the "formal or systematic questioning of a person; especially intensive questioning by the police, usually of a person arrested for or suspected of committing a crime." *Black's Law Dictionary* 1485 (7th ed. 1999). Although Pope's statements that "his guy" would be supplying the drugs were elicited by questions posed by Agent Snedeker, a government agent, these statements were not the result of an interrogation and therefore are not testimonial.[3]

The Supreme Court has not formulated a bright-line test for determining when an out-of-court statement should be considered testimonial because that statement resulted from a police interrogation. However, the Court has considered three factors in determining whether a statement is testimonial: first, the formal or systematic

---

[3] In *Crawford*, the Court stated that it used the term "interrogation" in its "colloquial, rather than any technical legal sense" and noted there were various definitions for "interrogation." 541 U.S. at 53 n.4. Although the Court refused to adopt a formulaic definition of "interrogation" for Confrontation Clause purposes, it held that a statement "knowingly given in response to structured police questioning, qualifies under any conceivable definition." *Id.* In this case, regardless of the definition ultimately embraced by the Court, the casual nature of the questions asked and circumstances under which the responses were given shows that this questioning falls well outside any reasonable definition of interrogation.

nature of the questioning, *Crawford*, 541 U.S. at 52-54; second, the objective belief of the declarant as to whether the statement could be used in a future court proceeding, *id.* at 51; and finally, the government agent's primary purpose in conducting any questioning of the declarant, *Davis*, 126 S. Ct. at 2278.

Here, Pope's out-of-court statements were made in a highly informal setting—over a cell phone.[4] Nothing in the record indicates that the incriminating statements resulted from a level of questioning so formal, systematic, or intensive as to be considered an interrogation.

Furthermore, the declarant, Pope, had no expectation or any objective reason to believe his statements would be used in a future court proceeding by the government. He had no indication he was speaking to a government agent and believed he was taking part in a conversation necessary to facilitate a drug transaction. At all times during the conversation, Agent Snedeker presented himself as a buyer seeking to purchase crack cocaine.

Finally, any questioning conducted by the undercover agent was not done in a manner to prove or establish past facts or conduct. Rather, the basic purpose of the

---

[4] In *Crawford*, Justice Scalia wrote that "Testimony, . . . is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." 541 U.S. at 51 (internal quotations and citation omitted).

conversation was to negotiate the terms and conditions of a future drug buy. Agent Snedeker and Pope discussed in detail the location of the drug buy, the price, the quantity, and the availability of drugs for future purchase.

Considering these factors, the statements made by Pope to Agent Snedeker were not testimonial in nature. Therefore, it is immaterial whether the declarant was unavailable or whether the defendant had an adequate opportunity to cross examine the declarant.

Furthermore, the statements made by Pope to Agent Snedeker fall outside the long-understood definition of hearsay. *See* Fed. R. Evid. 801(d)(2)(E) ("A statement is not hearsay if . . . [ it is ] a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."). The Supreme Court has held that co-conspirator statements do not fall within the ambit of the Confrontation Clause, and *Crawford* did not specifically foreclose the admissibility of such statements. *See Bourjaily v. United States*, 483 U.S. 171, 181 (1987) (admitting statements made unwittingly by a co-conspirator to a government informant and rejecting "any suggestion that admission of these statements against petitioner violated his rights under the Confrontation Clause"); *United States v. Inadi*, 475 U.S. 387, 391 (1986) (holding that the Confrontation Clause does not require a showing of unavailability

as a condition precedent to the admission of the out-of-court statements of a non-testifying co-conspirator).

There is no indication in *Crawford* that the Court intended to overrule its precedent regarding the admissibility of co-conspirator statements. Any ambiguity regarding the admissibility of co-conspirator statements in the wake of *Crawford* has been firmly resolved by the Fourth Circuit. *See United States v. Sullivan*, 455 F.3d 248, 258 (4th Cir. 2006) (holding statements by co-conspirator non-testimonial and thus admissible); *see also United States v. Canady*, 139 Fed. Appx. 499, 501 (4th Cir. 2005) (unpublished) ("The statements at issue here were not testimonial, even under the broadest interpretation of that term, as [the co-conspirator] clearly did not realize that his statements to the informant were going to be used against him at trial."). Other circuits that have addressed the issue have reached the same conclusion. *See United States v. Larson*, 460 F.3d 1200, 1213 (9th Cir. 2006); *United States v. Arriola-Perez*, 137 Fed. Appx. 119, 130 n.8 (10th Cir. 2005) (unpublished); *United States v. Jenkins*, 419 F.3d 614, 618 (7th Cir. 2005); *United States v. Robinson*, 367 F.3d 278, 290 n.20 (5th Cir. 2004); *United States v. Reyes*, 362 F.3d 536, 541 n.4 (8th Cir. 2004).

As a co-conspirator, Pope's out-of-court statements do not implicate the Confrontation Clause's strict requirements of unavailability and prior opportunity to

-9-

Case 1:05-cr-00008-JPJ-PMS   Document 115   Filed 01/07/07   Page 9 of 13   Pageid#: 332

cross-examine. The admission of these statements comport fully with the requirements of the Confrontation Clause as articulated in *Crawford*.

III

The defendant also argues that even if the statements are admissible under the Confrontation Clause they do not meet the requirements for admission under Federal Rule of Evidence 801(d)(2)(E). In particular, the defendant argues that there was insufficient evidence to show he and Pope were co-conspirators, and that the statements at issue were not made in furtherance of a conspiracy.[5]

In order to introduce statements by a co-conspirator, the government is required to prove by a preponderance of the evidence the necessary requirements for admissibility. *Bourjaily*, 483 U.S. at 176. The court may conditionally admit purported statements of a co-conspirator, subject to the government's later proof. *United States v. Blevins*, 960 F.2d 1252, 1256 (4th Cir. 1992).

---

[5] These arguments were not made in the timely Motion for New Trial, but raised later in the defendant's brief in support of the motion, filed after the time permitted for a motion for a new trial under Federal Rule of Criminal Procedure 33. Accordingly, it may be argued that they are untimely. However, the government has not objected and it is settled that the time limits for a motion for a new trial under Rule 33 grounded on a reason other than newly discovered evidence are not jurisdictional. *Eberhart v. United States*, 126 S. Ct. 403, 407 (2005).

-10-

I hold that the government did establish by a preponderance of the evidence that a conspiracy involving Pope and the defendant existed. Pope stated that "his guy" would be obtaining the crack cocaine. The defendant was found at the same location where Pope and Agent Snedeker arranged for the transaction to occur. Furthermore, the defendant was found in the same vehicle as Pope and the crack cocaine.

The evidence also showed that the defendant was seated by himself in the back seat of the vehicle. When authorities approached the vehicle and demanded that everyone place their hands in the air, the driver and front seat passenger immediately complied with the order. However, the evidence shows the defendant concealed his hands and leaned toward the area where crack cocaine was later found. This evidence coupled with the specificity of the statements made by Pope provided a sufficient basis to conclude a conspiracy existed between the defendant and Pope. *See Bourjaily*, 483 U.S. at 174.[6]

In addition to showing that the defendant was a member of the conspiracy, the government must establish that the statements at issue were made in order to further the purposes of the conspiracy. *See United States v. Pratt*, 239 F.3d 640, 643 (4th

---

[6] In *Bourjaily*, a statement similar to the ones at issue in this case was admitted against a co-defendant. The declarant, a co-conspirator of the defendant, noted that he would be assisted in a drug transaction by his "friend." This statement was introduced against the defendant who was arrested along with the declarant at the scene of the drug transaction. 483 U.S. at 174-75.

-11-

Cir. 2001). "A statement by a co-conspirator is made 'in furtherance' of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect." *United States v. Shores*, 33 F.3d 438, 443 (4th Cir. 1994). "Idle conversation that touches on, but does not further, the purposes of the conspiracy does not constitute a statement in furtherance of a conspiracy under Rule 801(d)(2)(E)." *Pratt*, 239 F.3d at 643 (citing *United States v. Urbanik*, 801 F.2d 692, 698 (4th Cir. 1986)).

Applying these principles to the facts of this case, it is clear that the challenged statements were made in order to further the purposes of the conspiracy. The evidence supports the conclusion that the defendant and Pope conspired to distribute crack cocaine. The phone conversation between Agent Snedeker and Pope dealt with more than simply the general topic of crack cocaine. Though initiated by Poindexter, the confidential informant, the conversation was undertaken by Pope to further the primary objective of the conspiracy—distribution of crack cocaine. In particular, Pope negotiated the quantity of crack cocaine to be purchased, the location and time of the transaction, the price, and the availability of drugs for future purchase. He also indicated that "his guy" would play a critical part in the transaction by procuring and supplying the requested drugs.

Although the statements were made to a government agent, a non-member of the conspiracy, the statements were designed to induce him to act in a manner that would have assisted in the accomplishment of the conspiracy's objectives. *See United States v. Smith*, 441 F.3d 254, 262 (4th Cir. 2006). The phone conversation was conducted by Pope solely to accomplish a drug sale—the ultimate purpose of any conspiracy to distribute drugs. The statements made by Pope were thus properly admitted at trial against the defendant.

IV

For the reasons stated, it is **ORDERED** that the defendant's Motion for New Trial is DENIED.

ENTER: January 7, 2007

/s/ JAMES P. JONES
Chief United States District Judge